UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
PETER ALCOCK,
Plaintiff,
v.
GEORGE "PETER" ALCOCK, individually,
LOUISE "LISA" ALCOCK, individually,
JEFFREY A. WARFIELD, CPA, individually,
MELISSA SPANGLER, individually,
WAQAS ALI, individually,
BRYN MAWR TRUST COMPANY (now WSFS Bank, N.A.),
MARIA QUINN, individually and in her official capacity with Bryn Mawr Trust Company,
CAROLINE ALCOCK CUNNINGHAM, individually,
BANK OF AMERICA, N.A.,
LISA S. PRESSER, ESQ., individually,
and other UNKNOWN DEFENDANTS (John and Jane Does 1-10),
Defendants.

Civil Action No._____

**VERIFIED COMPLAINT FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1961 ET SEQ., AND FOR WIRE FRAUD,
BANK FRAUD, IDENTITY THEFT, CONVERSION, BREACH OF FIDUCIARY DUTY, AND
FRAUDULENT MISREPRESENTATION**

**JURY TRIAL DEMANDED**

**I. INTRODUCTION AND NATURE OF THE ACTION**

1. This action arises from a decade-long racketeering enterprise operated by the Plaintiff's parents,

   their financial advisors, bank officers, trust company fiduciaries, and other co-conspirators to

   systematically deprive Plaintiff Peter Alcock of his rightful inheritance and business assets. This

   deprivation was achieved through an orchestrated and continuous pattern of wire fraud, mail fraud,

   bank fraud, identity theft, document forgery, and money laundering, all in violation of the

   Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and

related federal and state laws.

2.  The RICO enterprise, operating from approximately 2010 (with intensified activity from approximately 2015) through the present, consisted of an association-in-fact of the named individuals and entities who knowingly participated in a common scheme. The unlawful objectives of this scheme included: (a) forging and digitally manipulating trust instruments and powers of attorney to gain unauthorized control over Plaintiff's inheritance; (b) using Plaintiff's personal identifying information to open and manage financial accounts, file false tax returns, and redirect trust distributions without consent; (c) deploying interstate communications to execute financial transactions and transmit falsified documents; and (d) laundering illicit proceeds through real estate, shell companies, and political entities.

3.  The conspiracy escalated with an email dated October 28, 2015, deliberately forwarded by Defendant George Alcock to Plaintiff. This email initiated Plaintiff's contact with Defendant Waqas Ali, a Bank of America wealth advisor who was later convicted in this District for wire fraud and embezzlement in *United States v. Ali*, No. 19-CR-10182 (D. Mass.), using methods strikingly similar to those employed against Plaintiff during the same timeframe.

4.  The scheme involved the brazen diversion of a $200,000 trust distribution intended for Plaintiff, which was transferred into a joint account and immediately withdrawn by Defendant Lisa Alcock. It further involved the manipulation of trust documents, most egregiously evidenced by Defendant Bryn Mawr Trust Company producing two conflicting versions of a dispositive trust revocation document—one digitally manipulated and another mailed only after forgery allegations were raised—raising serious concerns of forgery and spoliation of evidence.

5.  As a direct and proximate result of Defendants' RICO violations, Plaintiff has suffered substantial injury to his business and property, including the loss of trust distributions, diverted business income, damage to his credit, and other significant financial damages believed to be in excess of

the specific sums itemized herein, totaling over $4.4 million before trebling, entitling him to treble damages and costs under 18 U.S.C. § 1964(c). The enterprise structure alleged herein satisfies the elements articulated in *Boyle v. United States*, including a common purpose, continuity of structure and personnel, and coordinated roles. The damages sought fall within the scope of *Medical Marijuana, Inc. v. Horn*, 602 U.S. ___ (2025), which permits treble recovery under RICO for business or property injuries flowing from related personal events caused by predicate acts.

## II. JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question) as this action arises under the laws of the United States, specifically the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. and 18 U.S.C. § 1964(c).

7.  This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367, as they derive from a common nucleus of operative fact.

8.  Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a) because a substantial part of the events giving rise to the claims occurred in this district. Specifically:

    a. Interstate wire communications constituting predicate acts originated from or were directed to Massachusetts.

    b. Banking activities central to the fraudulent scheme, including the diversion of funds, occurred at financial institutions operating in Boston, Massachusetts.

    c. Key Defendants George Alcock, Louise Alcock, Jeffrey A. Warfield, Melissa Spangler, and Caroline Alcock Cunningham reside in Massachusetts.

    d. Defendant Waqas Ali committed predicate acts while employed by Bank of America in Boston,

conduct for which he was convicted in this District.

## III. THE PARTIES

9.  Plaintiff **PETER ALCOCK** is a resident of Brooklyn, New York, and a direct victim of the Defendants' racketeering enterprise. He has been rendered indigent by the Defendants' actions, with significant debt and housing instability.

10. Defendant **GEORGE "PETER" ALCOCK** ("G. Alcock") is Plaintiff's father, a resident of Massachusetts, and a principal member and orchestrator of the RICO enterprise.

11. Defendant **LOUISE "LISA" ALCOCK** ("L. Alcock") is Plaintiff's mother, a resident of Massachusetts, and a principal member of the RICO enterprise who executed fraudulent transfers and obtained access to Plaintiff's accounts.

12. Defendant **JEFFREY A. WARFIELD, CPA** ("Warfield") is a Certified Public Accountant in Massachusetts and an associate of the enterprise who knowingly facilitated tax fraud and concealment of assets.

13. Defendant **MELISSA SPANGLER** ("Spangler") is a Private Wealth Advisor for Defendant Bank of America in Massachusetts and an associate of the enterprise who facilitated wire and bank fraud.

14. Defendant **WAQAS ALI** ("Ali") is a former Bank of America advisor in Massachusetts and a federally convicted felon for wire fraud and embezzlement in *United States v. Ali*, No. 19-CR-10182 (D. Mass.). He was a key member of the RICO enterprise who participated in the manipulation of Plaintiff's accounts.

15. Defendant **BRYN MAWR TRUST COMPANY** (now WSFS Bank, N.A.) ("BMT") is a financial institution that served as a trustee of the Bachelder Trust and produced contradictory and allegedly forged trust documents.

16. Defendant **MARIA QUINN** ("Quinn") is a Trust Administrator for BMT who confirmed key

details of the fraudulent $200,000 transfer in a recorded call.

17. Defendant **CAROLINE ALCOCK CUNNINGHAM** ("Cunningham") is Plaintiff's sister, a resident of Massachusetts, and an associate of the enterprise who served as a conduit for laundering funds through political entities.

18. Defendant **BANK OF AMERICA, N.A.** ("BANA") is a national banking association that employed Defendants Ali and Spangler and held the accounts used to execute the fraudulent schemes.

19. Defendant **LISA S. PRESSER, ESQ.** ("Presser") is an attorney who represented the Bachelder Estate and, upon information and belief, aided the enterprise's objectives.

20. **UNKNOWN DEFENDANTS** (John and Jane Does 1-10) are other individuals and entities who participated in or aided the RICO enterprise.

## IV. THE RICO ENTERPRISE: "THE ALCOCK FAMILY AND ASSOCIATES ENTERPRISE"

21. From approximately 2010 (with intensified activity from 2015) through the present, the Defendants G. Alcock, L. Alcock, Ali (during his involvement), Spangler, Warfield, BMT (through its officers and agents, including Quinn), Cunningham, BANA (through its employees Ali and Spangler, and its institutional actions or gross negligence), Presser (through actions aiding the Enterprise's objectives), and the Unknown Defendants, knowingly and voluntarily associated together to form an "association-in-fact" enterprise, hereinafter referred to as the "Alcock Enterprise" or the "Enterprise," within the meaning of 18 U.S.C. § 1961(4).

22. The Alcock Enterprise constituted an ongoing, structured organization, separate and distinct from the pattern of racketeering activity through which it operated, and possessed the following structural features consistent with *Boyle v. United States*:

   o **(a) Common Purpose:** The Enterprise's primary and unifying purpose was to

systematically and unlawfully enrich its core members (G. Alcock and L. Alcock) and associates by fraudulently divesting Plaintiff Peter Alcock of his rightful inheritance, trust distributions, business assets, and personal property. This common fraudulent purpose was pursued through a coordinated series of illicit activities including, but not limited to, identity theft, forgery, unauthorized account access and manipulation, diversion of funds, fraudulent tax filings, and money laundering, all while actively concealing these activities from Plaintiff and relevant authorities. This purpose extended beyond the commission of individual predicate acts and represented a long-term financial objective for the Enterprise.

- **(b) Ongoing Relationships, Ascertainable Structure, and Coordination:** The members of the Enterprise were linked by ongoing familial, professional, and conspiratorial relationships and operated with an ascertainable structure:

  - **Leaders:** George and Louise Alcock coordinated strategy and decision-making, using familial authority and financial control to direct the actions of other members.

  - **Execution Agents:** Waqas Ali and Melissa Spangler, as financial advisors, executed or enabled fraudulent transfers, opened unauthorized accounts, and masked transactions.

  - **Document Specialists:** Maria Quinn and other agents of Bryn Mawr Trust Company (BMT) produced or disseminated conflicting and allegedly forged trust instruments, including revocation documents, to mislead Plaintiff and authorities.

  - **Laundering Facilitators/Enablers:** Caroline Alcock Cunningham allegedly coordinated or benefited from payments structured through political entities and other channels to disguise the origin of misappropriated trust assets. Jeffrey A. Warfield, CPA, prepared fraudulent tax returns to conceal the true financial picture and facilitate the scheme.

- The Enterprise shared a common illegal purpose: to systematically deprive Plaintiff of control over and benefit from his inherited assets, trust income, and business interests, using deception, impersonation, forgery, and the exploitation of institutional channels. Coordination occurred through direct communications, use of joint or fraudulently accessed accounts, and aligned actions taken by fiduciaries and professionals.

- **(c) Longevity and Continuity of Purpose:** The Alcock Enterprise demonstrated sufficient longevity to pursue its common fraudulent purpose, operating from at least 2010 and intensifying its activities from 2015 through the present date of this complaint. The consistent pattern of defrauding Plaintiff over more than a decade, adapting methods as needed, shows a continuing criminal operation.

23. The Alcock Enterprise, through the predicate acts of racketeering and other activities described herein, engaged in, and its activities substantially affected, interstate and foreign commerce. This effect was manifest through, inter alia:

- (a) The repeated use of interstate wire communications (telephones, emails, internet-based online banking systems).

- (b) The use of the U.S. Mails and private/commercial interstate carriers to transmit fraudulent documents.

- (c) The execution of fraudulent banking transactions involving federally insured financial institutions (Defendant BANA and Defendant BMT/WSFS Bank) that operate in interstate commerce.

- (d) The laundering of illicitly obtained funds through financial transactions that crossed state lines or utilized banking systems involved in interstate commerce.

- (e) The diversion of Plaintiff's business income and trust distributions, affecting Plaintiff's

ability to engage in commerce across state lines.

- o (f) The administration of the Joseph E. Bachelder III Trust, an entity with assets and fiduciary relationships spanning multiple states, was directly manipulated by the Enterprise.

## V. PATTERN OF RACKETEERING ACTIVITY

In conducting and participating in the affairs of the Alcock Enterprise, Defendants committed, conspired to commit, attempted to commit, and/or aided and abetted numerous predicate acts of racketeering activity as defined in 18 U.S.C. § 1961(1). These acts were related to each other, sharing common purposes (to unlawfully divest Plaintiff of his assets and inheritance), common victims (Plaintiff), common participants (members of the Alcock Enterprise), and common methods of commission (fraud, deception, misuse of fiduciary positions, and identity theft). These acts amounted to and continue to constitute a threat of continuing racketeering activity, thereby forming a "pattern of racketeering activity" under 18 U.S.C. § 1961(5). The predicate acts include, but are not limited to:

### A. Predicate Acts of Wire Fraud (18 U.S.C. § 1343)

Defendants devised and participated in schemes to defraud Plaintiff of money and property by means of false and fraudulent pretenses, representations, and promises, transmitted via interstate wire communications. For each act of wire fraud detailed below, the identified Defendants acted with knowledge of the falsity of their representations and omissions, and with the specific intent to deceive and defraud the Plaintiff for their financial gain and to further the Enterprise's objectives.

### 24. Wire Fraud Predicate Act #1 – The Orchestrated Identity Confusion and Unauthorized

**Account Scheme (October 2015 – September 2016):**

- ○ **Who:** Defendant George "Peter" Alcock ("G. Alcock") and Defendant Waqas Ali ("Ali").

- ○ **What & How (G. Alcock - Initiation & Deception):** On or about **October 28, 2015**, G. Alcock, from Massachusetts, knowingly initiated and furthered the fraudulent scheme by transmitting via interstate wire (email from his Comcast.net account to Plaintiff's Gmail.com account in New York) a forwarded email chain. This email chain, **the specific contents of which are contained in Plaintiff's Exhibit A,** included correspondence between Defendant Louise "Lisa" Alcock ("L. Alcock") and Defendant Ali discussing the opening of Merrill Lynch MMS accounts. G. Alcock's email bore only the uninformative and misleading text "Sent from my iPhone," lacking any legitimate explanation. This was a deliberate act of fraudulent omission and misrepresentation by G. Alcock, designed to create ambiguity as to whether the communications were intended for Plaintiff or G. Alcock (who shares the same first name, "Peter"), and to fraudulently induce Plaintiff's unwitting engagement with Ali concerning accounts Plaintiff had not knowingly authorized. G. Alcock knew at the time of forwarding that Plaintiff had not authorized such account discussions and intended by this deceptive communication to lure Plaintiff into the scheme.

- ○ **What & How (Ali - Fraudulent Account Setup & Misrepresentation):** Following this, Defendant Ali, acting on the instructions or in concert with G. Alcock and L. Alcock, proceeded with actions related to these accounts. Subsequently, on or about **September 19, 2016, at approximately 2:47 PM EST**, Defendant Ali transmitted via interstate wire (email) a communication to Plaintiff. **The specific fraudulent statements and misrepresentations contained in this email are detailed in Plaintiff's Exhibit B.** This email from Ali falsely discussed and confirmed a **$100,000** investment transfer from a "revocable trust" purportedly in Plaintiff's name into a "new allocation." Plaintiff had no

knowledge of any such "revocable trust" in his name, had never discussed or authorized any such "allocation" or transfer with Ali, and Ali knew or recklessly disregarded the fact that Plaintiff had not authorized such a trust or transfer. Ali made these statements knowing them to be false or with reckless disregard for their truth, and with the intent to deceive Plaintiff and legitimize the unauthorized movement of funds.

- **What & How (G. Alcock - Concealment & Further Deception):** Upon Plaintiff forwarding Ali's September 2016 email (Exhibit B) to G. Alcock, questioning if it was intended for G. Alcock, G. Alcock, on or about the same timeframe, responded via interstate wire (email) with a **specific false description and affirmation**, such as "You are right. Thank you," or words to that effect. This statement by G. Alcock was a deliberate misrepresentation, made with knowledge of its falsity (as G. Alcock knew the funds and account manipulations pertained to Plaintiff's assets or identity) and with the specific intent to deceive Plaintiff, prevent further inquiry, and thereby conceal the unauthorized nature of the $100,000 transfer and the broader fraudulent scheme.

- **When:** October 28, 2015, through on or about September 19, 2016, and continuing thereafter as part of the concealment.

- **Where:** Interstate wire communications occurring between, at a minimum, Massachusetts (G. Alcock's location, Ali's place of business) and New York (Plaintiff's location), and affecting servers and banking systems in various states.

- **Materiality & Intent:** The misrepresentations and omissions by G. Alcock and Ali were material, as they induced Plaintiff's initial contact with Ali under false pretenses, led to the manipulation of accounts and funds using Plaintiff's identity without his informed consent, and were intended to (and did) deceive Plaintiff regarding the true nature of the transactions and the unauthorized control being exercised over his actual or purported assets.

**25. Wire Fraud Predicate Act #2 – The $200,000 Trust Distribution Fraud and Cover-Up (October 2023 – Early 2024):**

* Who: Defendants BMT (through its officers/agents, including Maria Quinn), L. Alcock, G. Alcock, and other Enterprise members.

* What & How (BMT & L. Alcock - Fraudulent Transfer & Misappropriation):

* (a) On or about October 17-23, 2023, Defendant BMT, by its officers or agents including Maria Quinn, from its headquarters in Pennsylvania, initiated or caused to be initiated an interstate wire transfer of approximately $200,000. These funds originated from the Bachelder Trust account (referred to by Ms. Quinn as "your grandmother's account") administered by BMT and were wired into a Bank of America MMS account falsely opened in Plaintiff's name in Massachusetts (the "-7601 Account"). The account had been previously established using Plaintiff's forged signature, which Defendant Lisa Alcock obtained through her access to Plaintiff's prior banking documentation, or through other fraudulent means. (See Plaintiff's Exhibits E, O).

* (b) On or about October 23, 2023, using Bank of America's online system (an instrumentality of interstate commerce accessed by L. Alcock), Defendant L. Alcock withdrew or caused the withdrawal of the entire $200,000 from said MMS account, transferring it into an unknown account or accounts controlled by her or other Enterprise members. These transfers were executed without Plaintiff's knowledge or authorization and occurred across state lines between at least Pennsylvania, Massachusetts, and potentially New York or Florida. The specific details of the wire transfer are in Plaintiff's Exhibit F, and evidence of L. Alcock's withdrawal is in Plaintiff's Exhibit G.

* What & How (L. Alcock & G. Alcock - False Representations in Court & to Plaintiff; BMT Confirmation of Distribution): Subsequently, when Plaintiff discovered this diversion, L. Alcock

and G. Alcock, directly and through their legal counsel, made materially false and misleading statements and omissions to Plaintiff and to the Suffolk County Superior Court during hearings and in electronically filed court documents (interstate wire transmissions) in late 2023 and early 2024. These specific false representations included, but were not limited to, statements such as the funds were a "bank error," or that the money belonged to "Louise [Bachelder]'s money, not yours," or denying the funds originated from the Bachelder Estate as a distribution to Plaintiff. These statements were made by L. Alcock and G. Alcock knowing them to be false at the time they were made, and with the specific intent to deceive Plaintiff and the Court, to conceal their misappropriation of the $200,000, and to obstruct Plaintiff's efforts to recover the funds.

* (d) Confirmation by BMT Agent: The fraudulent nature of L. Alcock's and G. Alcock's representations and the true origin of the funds as a distribution to Plaintiff are further evidenced by statements made by Defendant Maria Quinn, a Trust Officer of Defendant BMT. In a recorded telephone conversation with Plaintiff on November 21, 2024, Ms. Quinn confirmed: "That deposit [$200,000] was something that was initiated from your grandmother's account..." and further stated, "I was provided with instructions to transfer money into that account... We followed the instructions. We made the distribution." Ms. Quinn also acknowledged that what happened to the funds after they reached Bank of America was beyond BMT's direct involvement. (See Plaintiff's Exhibit H for selected transcript excerpts). These statements, transmitted via interstate telephone lines, affirm the funds were a trust distribution directed by BMT to an account identified for Plaintiff, directly contradicting Defendants' subsequent claims and supporting the allegation of misappropriation by L. Alcock.

* When: October 17-23, 2023 (transfers), through early 2024 (misrepresentations), with

subsequent confirmation of the nature of the transfer on November 21, 2024.

* Where: Interstate wire communications and banking transactions between Pennsylvania/New Jersey (BMT), Massachusetts (BANA MMS account, L. Alcock's likely location for online banking), and other states. False representations made in Suffolk County Superior Court, Massachusetts. Interstate telephone communication between New Jersey (Quinn) and New York (Plaintiff).

* Materiality & Intent: The fraudulent transfers and subsequent misrepresentations were material, as they resulted in the direct loss of $200,000 to Plaintiff and were intended to deceive Plaintiff and the Court to conceal this theft and the Enterprise's unlawful activities. BMT's actions in making the distribution as instructed, and Ms. Quinn's subsequent confirmation, highlight the fraudulent nature of the subsequent diversion and cover-up by other Enterprise members.

.

**B. Predicate Acts of Mail Fraud (18 U.S.C. § 1341)**

Defendants devised and participated in schemes to defraud Plaintiff of money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing such schemes, knowingly placed or caused to be placed in post offices or authorized depositories for mail matter, items to be sent or delivered by the Postal Service, or deposited or caused to be deposited items to be sent or delivered by private or commercial interstate carriers. For each act of mail fraud detailed below, the identified Defendants acted with knowledge of the falsity of their representations or the documents transmitted, and with the specific intent to deceive and defraud the Plaintiff.

26. **Mail Fraud Predicate Act #3 – The Forged and Contradictory Trust Revocation Scheme (2024-2025):**

   o **Who:** Defendant BMT (through its officers/agents, including Maria Quinn), and other

Enterprise members who directed or benefited from this act, including G. Alcock and L. Alcock.

- ○ **What & How (Transmission of Forged/Manipulated Document):**
  - ■ (a) On or about **July 15, 2024,** Defendant BMT, by its officer Maria Quinn or other agents, from its location (likely Pennsylvania or New Jersey), knowingly caused to be delivered by U.S. Mail or private/commercial interstate carrier (or via email constituting an interstate wire transmission that caused a physical document to be printed and relied upon as if mailed) to Plaintiff in New York, a PDF document named "2363_001.pdf". This document, **the specific contents, digital characteristics, and visible anomalies of which indicating digital manipulation and forgery are detailed in Plaintiff's Exhibit C,** purported to be the "Revocation of the 2011 Amendment and Restatement of the Joseph E. Bachelder 2010 Revocable Trust" dated February 14, 2020 ("Version A"). BMT transmitted Version A knowing, or in reckless disregard of the fact, that it contained indicia of forgery and digital manipulation, particularly in the signature areas. This transmission was intended to deceive Plaintiff into believing a valid revocation had occurred.
  - ■ (b) **What & How (Transmission of Contradictory Document):** Subsequently, after Plaintiff raised allegations of forgery and digital manipulation concerning Version A, on or about **April 2025,** Defendant BMT, from its location, knowingly caused to be delivered by U.S. Mail or private/commercial interstate carrier to Plaintiff in New York and/or filed in the New Jersey probate proceedings (Mercer County Docket No. MER-C-00390-21) a materially different version of the same purported revocation document ("Version B"). **The specific contents of Version B, which highlight its material inconsistencies with Version A, are detailed in Plaintiff's Exhibit D.**

Version B was a "pen and ink" version that showed, among other things, different
signature placements, different appearances of handwritten dates, and a notary stamp
in a completely different location compared to Version A.

- The knowing creation and transmission via interstate mail/carrier of two materially different
and conflicting versions of a dispositive legal instrument, where Version A (Exhibit C) bore
clear indicia of forgery and digital manipulation, and Version B (Exhibit D) was presented
as authentic despite these contradictions, constituted a scheme to defraud Plaintiff of his
rights under the trust, to obstruct justice by concealing the true status and potential invalidity
of any purported revocation, and to further the Enterprise's control over the trust assets.
BMT knew these documents were critical to determining Plaintiff's inheritance rights.

- **When:** On or about July 15, 2024, and on or about April 2025.

- **Where:** U.S. Mails or private/commercial interstate carriers, with documents sent from
BMT's location (likely Pennsylvania or New Jersey) to Plaintiff (New York) and/or filed in
New Jersey.

- **Materiality & Intent (BMT):** The transmission of these conflicting and suspect documents
was material as it directly impacted Plaintiff's claims to substantial trust assets. BMT, by its
agents, caused these documents to be transmitted via interstate mail/carrier knowingly, with
intent to deceive Plaintiff, the courts, and other interested parties as to the validity and terms
of the trust revocation, thereby furthering the Enterprise's objective of unlawfully depriving
Plaintiff of his inheritance.

27. **Mail Fraud Predicate Act #4 – Fraudulent Tax Filing Scheme (Multiple Occurrences,
2015-2019):**

- **Who:** Defendant Jeffrey A. Warfield, CPA, acting in concert with G. Alcock and L. Alcock.

- **What & How:** On multiple occasions between approximately **2015 and 2019**, for tax years

including but not limited to 2013, 2014, 2015, 2016, 2017, and 2018, Defendant Warfield, from his office in Massachusetts, prepared and knowingly caused to be delivered by U.S. Mail or private/commercial interstate carrier to Plaintiff in New York, and/or knowingly filed or caused to be filed with the IRS (via mail or electronic means causing mailings), fraudulent U.S. federal and state income tax returns and related documents (such as IRS Forms 8879 for e-filing authorization) in Plaintiff's name. **Plaintiff's Exhibit I contains or describes IRS Tax Transcripts or copies of these forged/fraudulent returns, which show, for example, substantial income reported for Plaintiff that he never received and/or deductions claimed to which he was not entitled, thereby fraudulently reducing reported income of other Enterprise members or diverting Plaintiff's refunds.**

- ■ For instance, as specifically alleged in the original complaint draft, on or about **April 10, 2017**, Warfield mailed from Massachusetts to Plaintiff's Brooklyn address via USPS an IRS Form 8879 for tax year 2016, accompanied by a cover letter. **The fraudulent statements in this cover letter, such as "Your return will be filed upon receipt of the signed Form 8879. No tax is due; your refund will be deposited," and the fraudulent content of the referenced tax return (reporting approximately $156,000 in income Plaintiff never received, claiming improper real estate tax deductions for 16 Cononicus Road where Plaintiff never lived, and directing the refund to accounts Plaintiff did not control) are specifically asserted.** Warfield knew this information was false and intended to deceive Plaintiff and the IRS.

- ○ Each such mailing of fraudulent tax documents, or documents based on fraudulent information, constituted a distinct use of the U.S. Mails or private/commercial interstate carriers in furtherance of the scheme to defraud Plaintiff, to conceal the diversion of his

income and assets by other Enterprise members, to create a false paper trail legitimizing the Enterprise's control over funds, and to potentially fraudulently obtain tax refunds in Plaintiff's name for the benefit of the Enterprise.

- ○ **When:** Annually for tax years 2013 through 2018 (with mailings occurring approximately 2014 through 2019).

- ○ **Where:** U.S. Mails or private/commercial interstate carriers, with documents sent from Warfield's location (Massachusetts) to Plaintiff (New York) and/or to IRS service centers in other states.

- ○ **Materiality & Intent (Warfield, G. Alcock, L. Alcock):** Warfield, in concert with G. Alcock and L. Alcock, prepared and mailed/caused to be mailed these fraudulent documents knowing they contained materially false information regarding Plaintiff's income, deductions, and refund dispositions. This was done with the specific intent to deceive Plaintiff and government authorities (IRS, state tax agencies), to facilitate the misappropriation of Plaintiff's funds (including tax refunds), to avoid tax liabilities for Enterprise members, and to conceal the overall fraudulent enterprise.

### C. Predicate Acts of Bank Fraud (18 U.S.C. § 1344)

Defendants knowingly executed and attempted to execute schemes and artifices to defraud financial institutions (including but not limited to Defendant BANA, a federally insured financial institution, and Defendant BMT), and to obtain moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, such financial institutions, by means of false or fraudulent pretenses, representations, or promises. For each act of bank fraud detailed below, the identified Defendants acted with knowledge of the falsity of their representations and with the specific intent to deceive and defraud the financial institution(s) and the Plaintiff.

28. **Bank Fraud Predicate Act #5 – Unauthorized Account Creation and Misuse Scheme (2015-2023):**

   o **Who:** Defendants L. Alcock, G. Alcock, Ali, Spangler, and BANA (vicariously, through its employees Ali and Spangler acting within the scope of the Enterprise and/or with BANA's gross negligence or willful blindness to their employees' fraudulent conduct).

   o **What & How (Scheme to Defraud BANA):** Between approximately **2015 and 2023**, these Defendants executed a multifaceted scheme to defraud Defendant BANA and to obtain funds under BANA's custody and control by means of false and fraudulent pretenses, representations, and promises.

     ■ **(a) Fraudulent Opening of Account:** On or around **2015**, G. Alcock, L. Alcock, and/or Ali, acting in concert, caused a BANA MMS (Managed Money Strategy) account ending in -7601 to be opened using Plaintiff's name and Social Security Number. This was achieved by submitting, or causing to be submitted, to BANA applications or account opening documents that contained false and fraudulent pretenses and representations, specifically that Plaintiff had knowingly authorized the opening of this account for their use or joint use, when in fact Plaintiff had not provided such full, knowing, or lawful authorization for the manner in which the account would be controlled and utilized by L. Alcock and G. Alcock. **(See Plaintiff's Exhibit E for records showing no Plaintiff-initiated activity prior to Oct 2023).**

     ■ **(b) Fraudulent Securing of Access/Control:** Defendant L. Alcock obtained or was granted joint signatory authority or other forms of access and control over said MMS account -7601 by means of false and fraudulent pretenses submitted to BANA. This included, but was not limited to, the use of a **"duplicated signature authorization**

**from an unrelated Bank of America account,"** as discovered by Plaintiff **(See Plaintiff's Exhibit O for signature card)**. This false authorization, known by L. Alcock to be unauthorized by Plaintiff for this purpose, was submitted to BANA to fraudulently secure L. Alcock's control over an account nominally belonging to Plaintiff, thereby deceiving BANA as to the legitimacy of her control.

- (c) **Misrepresenting Nature of Transactions to BANA:** This unauthorized account and L. Alcock's fraudulently obtained control over it were then used to facilitate fraudulent transactions, including the October 23, 2023, wire transfer of $200,000 into and immediately out of this account (as detailed in Wire Fraud Predicate Act #2). In causing these transactions, Defendants L. Alcock and G. Alcock, directly or through agents like Ali or Spangler, misrepresented to BANA, explicitly or implicitly, the nature, purpose, and Plaintiff's authorization for these transactions, thereby deceiving BANA into processing transactions that were part of a scheme to misappropriate Plaintiff's funds.

- (d) **Concealment and Furtherance by BANA Employees (Ali & Spangler):** Defendants Ali (until his departure/conviction around 2017-2019) and subsequently Defendant Spangler, as BANA employees and fiduciaries, facilitated the establishment, operation, and manipulation of this and potentially other accounts. They did so by, inter alia, failing to follow proper banking procedures and due diligence with respect to verifying Plaintiff's true consent and instructions, ignoring red flags of unauthorized activity and elder financial abuse (concerning Joseph E. Bachelder III's accounts which funded Plaintiff's interests), and/or actively assisting G. Alcock and L. Alcock in their scheme. This conduct by Ali and Spangler defrauded BANA of its right to their honest services, exposed BANA to financial risk

and liability, and was essential in enabling the Enterprise to obtain Plaintiff's funds held by or passing through BANA.

- **When:** Approximately 2015 through 2023, with specific fraudulent transactions such as the $200,000 diversion in October 2023.

- **Where:** Conduct involving BANA, a federally insured financial institution, with activities occurring through its branches (including in Boston, Massachusetts), online systems, and interstate banking operations affecting accounts and transactions across state lines.

- **Materiality & Intent (L. Alcock, G. Alcock, Ali, Spangler):** These Defendants acted with the specific intent to deceive and defraud BANA by making false statements and using fraudulent means to open, access, control, and transact through bank accounts in Plaintiff's name to misappropriate funds. These misrepresentations and omissions were material to BANA's decisions to open the accounts, grant access, and process transactions, thereby exposing BANA to loss and liability, and facilitating the Enterprise's theft.

### D. Predicate Acts of Aggravated Identity Theft (18 U.S.C. § 1028A)

29. **Identity Theft Acts #6-10:** During and in relation to the wire, mail, and bank fraud predicate acts described above, Defendants G. Alcock, L. Alcock, Ali, Spangler, and Warfield knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person (Plaintiff Peter Alcock, including his name, Social Security Number, date of birth, and signature) with the intent to commit, or to aid or abet, or in connection with, other unlawful activity that constitutes a felony violation of federal law (specifically, the predicate acts of wire fraud, mail fraud, and bank fraud) and state law. Each instance of such knowing use of Plaintiff's identity in furtherance of a predicate felony constitutes a separate act of aggravated identity theft.

### E. Predicate Acts of Money Laundering (18 U.S.C. § 1956)

30. **Money Laundering Act #11 – Political Entity Laundering (2017-2018):** As identified in public

reports and supported by transactional evidence (Plaintiff's Exhibit J), in or about 2017-2018,
Defendant Cunningham, in concert with G. Alcock and L. Alcock, conducted or attempted to
conduct financial transactions involving the proceeds of specified unlawful activity (namely, the
wire fraud, mail fraud, and bank fraud described herein). Specifically, over $300,000 in funds
derived from the misappropriation of Plaintiff's trust assets or other fraudulently obtained monies
were channeled through MassGOP-related political entities or other entities as uncontracted
payments to Defendant Cunningham. These transactions were designed in whole or in part to
conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified
unlawful activity and/or to avoid a transaction reporting requirement under Federal or State law.
These transactions affected interstate commerce.

**F. Continuity of the Pattern of Racketeering Activity**

The numerous predicate acts committed by the Defendants, as detailed above, were not isolated or
sporadic events but constituted a clear pattern of related and continuous racketeering activity.

* Relatedness: The predicate acts shared common purposes (the unlawful financial enrichment of the
Enterprise members at Plaintiff's expense), common victims (Plaintiff and entities holding his beneficial
interests), common participants (the members of the Alcock Enterprise acting in their respective roles),
and common methods of commission (deception, fraud, forgery, identity theft, misuse of fiduciary
positions, and concealment). For example, the wire frauds, mail frauds, and bank frauds were all steps in
the overarching scheme to gain control of and divert Plaintiff's assets.

* Continuity: The pattern of racketeering activity has demonstrated both closed-ended and open-ended
continuity:

* Closed-Ended Continuity: The predicate acts occurred over a substantial period, from approximately
2010 (initial fraudulent property conveyance and planning) with intensified, documented predicate acts
from 2015 through 2025 (e.g., Wire Fraud Act #1 in 2015-2016; Fraudulent Tax Filings 2015-2019;

Political Entity Laundering 2017-2018; $200,000 Trust Distribution Fraud in 2023; Forged Revocation Scheme in 2024-2025). This period of over a decade of related criminal conduct aimed at defrauding Plaintiff satisfies closed-ended continuity.

* Open-Ended Continuity and Threat of Future Repetition: The Defendants' past conduct and the operational nature of the Alcock Enterprise establish a clear and present threat of future repetition of racketeering activities. This threat is evidenced by:

* (i) The ongoing control and concealment of assets and information by Enterprise members. Defendants G. Alcock and L. Alcock continue to benefit from and occupy property acquired or maintained through fraudulent means.

* (ii) The Enterprise's demonstrated willingness to engage in new forms of fraud and obstruction when prior methods are challenged.

* (iii) The ongoing nature of the fiduciary relationships exploited by the Enterprise.

* (iv) The fact that substantial assets belonging to Plaintiff remain unaccounted for or under the control of the Enterprise, creating an ongoing incentive and opportunity for further acts of concealment, diversion, or laundering.

* (v) The Enterprise's core objective – to permanently deprive Plaintiff of his rightful assets – remains unfulfilled in its entirety from their perspective, and their past conduct shows a propensity to take further unlawful actions to achieve this and protect their illicit gains.

* (vi) The very nature of the Enterprise, as a family-centered operation with embedded professional enablers, suggests it is a long-term criminal operation that will continue to act to preserve its illicit gains and control unless definitively stopped by court intervention. The predicate acts are part of the Enterprise's regular way of conducting its unlawful business of defrauding the Plaintiff.

This continuous course of conduct, characterized by repeated and related predicate acts over many years and demonstrating a clear threat of ongoing criminal activity, satisfies the pattern requirement of RICO.

## VI. RICO VIOLATIONS

COUNT I

(Violation of 18 U.S.C. § 1962(c) – Conduct of an Enterprise Through a Pattern of Racketeering Activity)

(Against All Defendants Named in Paragraph 21, as per their roles detailed in Paragraphs 22 and their participation in predicate acts detailed in Paragraphs 24-30)

31. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 30 and the pattern of racketeering activity described in Section V (including subsections A-F) as if fully set forth herein.

32. Defendants **G. Alcock** and **L. Alcock**, as leaders and orchestrators of the Alcock Enterprise; Defendant **Ali** and Defendant **Spangler**, as members of the Financial/Banking Tier; Defendant **Warfield** and Defendant **Presser**, as members of the Professional Services Tier; Defendant **BMT** (through its officers and agents, including Defendant **Quinn**), as a member of the Institutional Fiduciary Tier; Defendant **Cunningham**, as a member of the Money Laundering & Support Tier; and Defendant **BANA** (through the actions of its employees Ali and Spangler acting within the Enterprise's scope, and/or through its own actions or gross negligence enabling the fraud), being persons employed by or associated with the Alcock Enterprise, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did unlawfully, willfully, and knowingly conduct and participate, directly and indirectly, in the conduct of the Alcock Enterprise's affairs through the pattern of racketeering activity described in Section V above, in violation of 18 U.S.C. § 1962(c).

    o Specifically, **G. Alcock** and **L. Alcock** directed and participated in multiple predicate acts, including Wire Fraud Acts #1 and #2, the fraudulent tax scheme (Mail Fraud Act #4), the unauthorized account scheme (Bank Fraud Act #5), and the overarching scheme to divert assets and launder proceeds.

- **Ali** participated in Wire Fraud Act #1 and the unauthorized account scheme (Bank Fraud Act #5).

- **Spangler** participated in the unauthorized account scheme (Bank Fraud Act #5) and facilitated ongoing concealment and diversions.

- **Warfield** participated in the fraudulent tax filing scheme (Mail Fraud Act #4).

- **BMT,** through its agents including **Quinn,** participated in Wire Fraud Act #2 and the forged revocation scheme (Mail Fraud Act #3).

- **Cunningham** participated in the political entity laundering scheme (Money Laundering Act #11).

- **BANA,** through its employees Ali and Spangler, and its systems, was instrumental in the execution of Wire Fraud Acts #1 & #2 and Bank Fraud Act #5.

- **Presser** participated by aiding the Enterprise's objectives related to the Bachelder Estate and Trust, facilitating the control and misdirection of assets by the Alcocks.

- Each of these Defendants played a role in the operation or management of the Enterprise itself by carrying out the Enterprise's illicit activities.

33. As a direct and proximate result of these Defendants' violations of 18 U.S.C. § 1962(c) through their participation in the conduct of the Alcock Enterprise's affairs via the pattern of racketeering activity, Plaintiff has been injured in his business and property as detailed in Section VIII below.


COUNT II

(Violation of 18 U.S.C. § 1962(d) – Conspiracy to Conduct an Enterprise Through a Pattern of Racketeering Activity)

(Against All Defendants Named in Paragraph 21)

34. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 33 as if fully set forth

herein.

35. From approximately 2010 to the present, in the District of Massachusetts and elsewhere, Defendants **G. Alcock, L. Alcock, Ali, Spangler, Warfield, BMT (through its culpable officers and agents, including Quinn), Cunningham, BANA (through its culpable employees Ali and Spangler, and its enabling actions), Presser,** and the Unknown Defendants, did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree together and with each other, and with other co-conspirators known and unknown, to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Alcock Enterprise through a pattern of racketeering activity.

- Each of the aforementioned Defendants knowingly agreed to the overall criminal objective of the conspiracy, namely, to unlawfully divest Plaintiff of his assets and inheritance for their benefit, and to conceal these activities.

- Each of these Defendants further agreed to the commission of, or to aid and abet the commission of, at least two predicate acts of racketeering activity in furtherance of the conspiracy. This agreement can be inferred from their knowing participation in the multiple predicate acts detailed in Section V, their coordinated actions, their communications, their shared fraudulent purpose, and their mutual benefit from the Enterprise's activities. For example:

  - **G. Alcock and L. Alcock** agreed to orchestrate the entire scheme and participated in numerous predicate acts.

  - **Ali and Spangler** agreed to use their positions at BANA to facilitate fraudulent account openings and transfers.

  - **Warfield** agreed to prepare fraudulent tax returns to conceal income and divert refunds.

- **BMT and Quinn** agreed to manipulate trust documents and facilitate unauthorized distributions.

- **Cunningham** agreed to launder proceeds through political entities.

- **Presser** agreed to use her legal position to aid the Alcocks' control over estate and trust matters in furtherance of the scheme.

- **BANA,** through the knowing agreement of its employees Ali and Spangler to participate in the fraudulent scheme using BANA's facilities, became part of the conspiracy.

  ○ The Defendants understood the scope of the Enterprise and knowingly agreed to achieve its common fraudulent purpose through a pattern of racketeering.

36. Numerous overt acts were committed by one or more of the conspirators in furtherance of the conspiracy, including but not limited to each of the predicate acts of racketeering activity described in Section V above, as well as acts of planning, communication, concealment, and mutual assistance among the conspirators. As a direct and proximate result of Defendants' conspiracy and the overt acts committed in furtherance thereof, Plaintiff has been injured in his business and property in an amount to be proven at trial but no less than the sum detailed in Section VIII.

## VII. SUPPLEMENTAL STATE LAW CLAIMS (28 U.S.C. § 1367)

COUNT III – COMMON LAW FRAUD AND FRAUDULENT MISREPRESENTATION

(Against Defendants G. Alcock, L. Alcock, Ali, Spangler, Warfield, BMT, and Quinn)

37. Defendants G. Alcock, L. Alcock, Ali, Spangler, Warfield, BMT (by its agents, including Quinn) made numerous material misrepresentations of past or existing fact to Plaintiff and/or concealed material facts they had a duty to disclose, regarding, inter alia, Plaintiff's beneficiary status, the validity of trust documents (Exhibits C, D), the purpose and use of POA documents, the nature of financial transactions (Exhibits B, F, G), the opening and status of bank accounts in Plaintiff's name (e.g., BANA MMS -7601),

statements made in court regarding the $200,000 (Wire Fraud Act #2), and the source and destination of funds. These misrepresentations and omissions, detailed in the predicate acts, were false; said Defendants knew they were false or made them with reckless disregard for their truth; they were made with the intent to induce Plaintiff's reliance or inaction; Plaintiff justifiably relied on them or was harmed by the concealment; and Plaintiff suffered damages as a direct result.

COUNT IV – BREACH OF FIDUCIARY DUTY

(Against Defendants G. Alcock, L. Alcock (as parents, de facto fiduciaries, and agents under POA), BMT, Quinn (as trustee/trust officers/agents), Ali, Spangler (as financial advisors handling Plaintiff's purported accounts), and Warfield (as CPA preparing Plaintiff's taxes and advising on financial matters under purported POA))

38. Defendants G. Alcock, L. Alcock, BMT (by its agents, including Quinn), Ali, Spangler, and Warfield owed Plaintiff fiduciary duties of loyalty, care, good faith, candor, and to act in Plaintiff's best interests with respect to his assets, trusts, and financial affairs. They breached these duties through acts of self-dealing, misappropriation of funds (e.g., $100,000 transfer, $200,000 diversion), misrepresentation and concealment (e.g., regarding account openings, trust document authenticity, tax filings), failure to account, and other acts of fraud and misconduct detailed in the predicate acts, all of which caused Plaintiff substantial damages.

COUNT V – CONVERSION

(Against Defendants G. Alcock, L. Alcock, Cunningham, BMT, Ali, and Spangler)

39. Defendants G. Alcock, L. Alcock, Cunningham, BMT (by permitting unauthorized distributions), Ali, and Spangler wrongfully and without authorization intentionally exercised dominion and control over Plaintiff's property—including but not limited to trust distributions (e.g., the $100,000 and $200,000), Velo Inc. business income, tax refunds, and funds in accounts bearing his name—inconsistent with Plaintiff's ownership rights and without his consent, thereby converting said property for their own use or

the use of the Enterprise, and causing Plaintiff damages.

## VIII. DAMAGES

40. As a direct and proximate result of Defendants' violations of RICO, specifically their commission of the predicate acts of wire fraud, mail fraud, bank fraud, identity theft, and money laundering as described herein, Plaintiff has suffered substantial and direct injury to his business and property. These injuries were directly and proximately caused by the Defendants' racketeering activity, which systematically diverted Plaintiff's assets, encumbered his property with fraudulent debt, damaged his financial standing and creditworthiness (thereby impairing his business and employment opportunities), and forced him to expend resources to uncover and attempt to remedy the fraud. Pursuant to the Supreme Court's ruling in *Medical Marijuana, Inc. v. Horn*, 602 U.S. ___ (2025), Plaintiff is entitled to recover for such business and property losses, including those that derive from or are intertwined with personal hardships directly caused by the Defendants' RICO violations. The damages include but are not limited to the following (a more detailed schedule may be provided as an exhibit):

    ○ **$200,000: Diverted Trust Distribution (October 2023).** This sum represents a direct loss of Plaintiff's property (trust funds specifically designated for him) proximately caused by Wire Fraud Predicate Act #2 and Bank Fraud Predicate Act #5, through which Defendants L. Alcock, BMT, and others unlawfully diverted this distribution.

    ○ **$100,000: Unauthorized "Revocable Trust" Transfer (September 2016).** This sum represents a direct loss of Plaintiff's property (funds from a purported trust in his name) proximately caused by Wire Fraud Predicate Act #1, through which Defendants G. Alcock and Ali effected an unauthorized transfer of funds using Plaintiff's identity.

    ○ **$303,586: Funds Laundered Through Political Payments to Defendant Cunningham.**

This sum represents Plaintiff's property (trust funds or proceeds of other diverted assets) unlawfully diverted and laundered, proximately caused by Money Laundering Predicate Act #11, which itself was predicated on the various fraud schemes (e.g., Wire Fraud Acts #1 & #2, Bank Fraud Act #5) that generated the illicit proceeds.

- **$40,000: Approximate Back Taxes, Penalties, and Interest Owed due to Fraudulent Filings.** This financial liability constitutes a direct injury to Plaintiff's property, proximately caused by Mail Fraud Predicate Act #4, wherein Defendant Warfield, in concert with G. Alcock and L. Alcock, filed fraudulent tax returns in Plaintiff's name, creating these tax obligations and damaging his financial standing.

- **$1,500,000: Losses from Unauthorized Transfers by Waqas Ali to Fraudulent Corporate/Shell Accounts (since approx. 2010).** This sum represents direct losses of Plaintiff's property (trust funds, inheritances, or investment capital) resulting from a series of unauthorized transfers orchestrated by Defendant Ali, at the behest of G. Alcock and L. Alcock, into fraudulent corporate accounts or shell companies. These losses were proximately caused by numerous predicate acts of wire fraud and bank fraud similar to Wire Fraud Act #1 and Bank Fraud Act #5, forming part of the continuous pattern of racketeering activity designed to siphon Plaintiff's assets.

- **$750,000: Losses from Fraudulent Home Equity Mortgages, Conveyances, and Misuse of Shell Companies.** This sum represents direct injury to Plaintiff's property (including lost equity in real property and funds diverted through shell companies) and business (damage to credit and financial capacity caused by fraudulent debt obligations). These losses were proximately caused by predicate acts of bank fraud, wire fraud, and mail fraud committed by Defendants G. Alcock, L. Alcock, Melissa Spangler, and BANA. Specific acts include:
    - Falsely obligating Plaintiff to home equity mortgages on properties he did not own or

control, using his stolen identity and credit, the proceeds of which were diverted to the Enterprise.

- ■ Fraudulent conveyances of real property (such as the quitclaim deed for $1.00 on Plaintiff's birthday in 2011 for 16 Cononicus Road, Gloucester, MA, which was subsequently heavily mortgaged) designed to strip equity that should have benefited Plaintiff or to launder illicit proceeds.

- ■ Establishing and utilizing shell companies (e.g., Velo Inc. after its fraudulent takeover) in Plaintiff's name, listing Plaintiff as owner and G. Alcock as manager, to conceal luxury purchases made with Plaintiff's trust assets and to conduct other fraudulent transactions. The dissolution of one such company by G. Alcock immediately prior to FinCEN BOI regulations taking effect further evidences the fraudulent intent and proximate causation of loss to Plaintiff by preventing recovery and transparency.

○ **$29,000: Approximate Rent Arrears and Associated Property Losses.** The Defendants' extensive racketeering activity, including the predicate acts described above, directly and proximately caused Plaintiff's severe financial devastation and housing instability. This personal hardship, directly resulting from the theft of his funds and damage to his financial standing, led to the quantifiable property loss of rent arrears. Furthermore, this housing instability and financial distress directly impaired Plaintiff's ability to conduct his business as a tech worker/consultant, leading to lost business income and opportunities, a business loss recoverable under *Medical Marijuana, Inc. v. Horn*. The inability to maintain stable housing, a direct result of the predicate acts stripping Plaintiff of his financial resources, is a direct cause of these business and property losses.

○ **$4,500: Uninsured Medical Debt and Resulting Financial Losses.** The period of financial

abuse orchestrated by Defendants through the aforementioned predicate acts directly led to

Plaintiff's inability to maintain health insurance. Consequently, necessary medical treatments

resulted in uninsured medical debt. This debt constitutes a property loss. Moreover, the

stress and financial ruin caused by the Defendants' racketeering activity foreseeably

contributed to health issues requiring medical attention. To the extent that these health issues

and the ensuing medical debt impaired Plaintiff's ability to work and earn income in his

business or profession, or forced the liquidation of any remaining property to cover such

debts, these constitute business and property losses proximately caused by the Defendants'

RICO violations and are recoverable under *Medical Marijuana, Inc. v. Horn.*

- o   Additional damages related to diverted business income and lost real estate equity in an

    amount to be proven at trial, but estimated to be **in excess of $1,500,000** in total.


## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Peter Alcock respectfully prays for judgment against Defendants as follows:

A. Actual damages sustained by Plaintiff as detailed in Section VIII, in an amount to be proven at trial but

not less than the sum of the itemized losses and further proven additional damages, currently estimated to

exceed $4.4 million before trebling;

B. Treble damages pursuant to 18 U.S.C. § 1964(c);

C. Plaintiff's costs of suit, including reasonable attorney's fees;

D. Punitive damages on supplemental state law claims where authorized by law;

E. A declaration that the purported February 14, 2020, trust revocation instruments (Exhibits C and D) are

invalid, null, and void due to forgery, fraud, and/or undue influence;

F. The imposition of a constructive trust over all assets, including real estate and financial accounts,

acquired or maintained with proceeds from Defendants' unlawful activities or traceable to Plaintiff's

misappropriated assets;

G. An immediate Temporary Restraining Order and Preliminary Injunction, as further detailed in Plaintiff's contemporaneously filed Motion, to freeze assets traceable to the racketeering activity, preserve all relevant evidence, and prevent further irreparable harm to Plaintiff;

H. Such other and further relief as this Court deems just, equitable, and proper to remediate the harm caused by Defendants' unlawful conduct and to protect Plaintiff's rights.

## X. JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Peter Alcock

Peter Alcock, Pro Se

1 N. 4th Place #42C

Brooklyn, NY 11249


## VERIFICATION

I, Peter Alcock, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint, and the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on this 4th day of June, 2025, in Brooklyn, New York.

/s/ Peter Alcock

Peter Alcock, Pro Se

1 N. 4th Place #42C

Brooklyn, NY 11249

UNITED STATES DISTRICT COURT