DISTRICT OF MASSACHUSETTS

PETER ALCOCK,

Plaintiff,

v.

GEORGE "PETER" ALCOCK, et al.,

Defendants.

**Civil Action No.**_____

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Peter Alcock respectfully submits this Memorandum of Law in support of his Motion for a Temporary Restraining Order and Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

This case involves a decade-long racketeering scheme perpetrated by Plaintiff's parents, financial advisors, and bank officers to deprive him of his rightful inheritance and business assets through wire fraud, bank fraud, identity theft, and money laundering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1964. Plaintiff now seeks immediate injunctive relief to prevent Defendants from dissipating, concealing, or destroying assets and documents that are the subject of this litigation.

Absent court intervention, Defendants will continue to divert and launder trust assets, destroy or alter evidence, and inflict further irreparable financial harm. A narrowly tailored Temporary Restraining Order

("TRO") and Preliminary Injunction are necessary to preserve the status quo, prevent obstruction of justice, and maintain the Court's ability to render effective relief.

## II. LEGAL STANDARD

To obtain a temporary restraining order or preliminary injunction under Rule 65, a plaintiff must show:

1. A likelihood of success on the merits;
2. A likelihood of suffering irreparable harm in the absence of relief;
3. That the balance of equities tips in the plaintiff's favor; and
4. That the injunction is in the public interest.

> See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008); Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).

## III. ARGUMENT

### A. Plaintiff Is Likely to Succeed on the Merits

The Verified Complaint, supported by documentary exhibits, alleges a clear and ongoing pattern of racketeering activity involving wire fraud (18 U.S.C. § 1343), bank fraud (§ 1344), mail fraud (§1341), identity theft (§ 1028A), and money laundering (§ 1956), all conducted through the "Alcock Enterprise," an association-in-fact within the meaning of § 1961(4). The detailed allegations meet the heightened pleading standards of Fed. R. Civ. P. 9(b) and *Twombly/Iqbal*.

Examples of predicate acts demonstrating this likelihood include:

- The **October 2023 diversion of a $200,000 trust distribution**, facilitated by Defendant L. Alcock's use of a **fraudulently accessed Bank of America MMS account** (established with

Plaintiff's stolen identity and a duplicated signature authorization from an unrelated account, as detailed in Bank Fraud Predicate Act #5 and Plaintiff's Exhibit O), and the immediate withdrawal of said funds via interstate online banking. The nature of this transfer as a trust distribution to an account identified for Plaintiff was subsequently confirmed by Defendant Maria Quinn of BMT (Plaintiff's Exhibit H), directly contradicting Defendants' false representations in court regarding the source and purpose of these funds (as detailed in Wire Fraud Predicate Act #2 and supported by Plaintiff's Exhibits F, G, and H).

- The mailing by Defendant **Bryn Mawr Trust Company**, via interstate carrier, of **two conflicting and dispositive trust revocation documents**—one (Version A, Exhibit C) exhibiting clear digital manipulation and forgery, and a subsequent, materially different "pen-and-ink" version (Version B, Exhibit D) produced only after Plaintiff raised forgery concerns—in an attempt to fraudulently validate the disinheritance of Plaintiff (as detailed in Mail Fraud Predicate Act #3).
- The systematic use of Plaintiff's identity by Defendants G. Alcock, L. Alcock, Ali, and Warfield to **open unauthorized bank accounts** (e.g., the Waqas Ali scheme involving a purported "revocable trust" and a $100,000 transfer, detailed in Wire Fraud Predicate Act #1 and supported by Plaintiff's Exhibits A and B), **file fraudulent tax returns reporting false income and diverting refunds** (as detailed in Mail Fraud Predicate Act #4 and supported by Plaintiff's Exhibit I), and execute other unauthorized financial transfers.
- The laundering of over **$300,000 in misappropriated trust funds** through payments to Defendant Caroline Alcock Cunningham via MassGOP-related political entities, designed to conceal the illicit origin of the funds (as detailed in Money Laundering Predicate Act #11 and supported by Plaintiff's Exhibit J).

These acts constitute predicate offenses under 18 U.S.C. § 1961(1). Plaintiff also states strong claims for common law fraud, breach of fiduciary duty, and conversion against parties who owed him clear legal

duties, including family fiduciaries, trustees, and tax professionals, as detailed in Counts III-V of the Verified Complaint.

### B. Plaintiff Will Suffer Immediate and Irreparable Harm

Plaintiff's Verified Complaint and accompanying evidence establish that:

- Defendants have already transferred and concealed substantial trust assets, including the $200,000 diversion.
- Defendant BMT produced conflicting and apparently forged trust documents, indicating a willingness to spoliate or fabricate evidence (Exhibits C, D).
- Plaintiff is facing ongoing housing insecurity, significant tax liens resulting from fraudulent filings, and mounting medical debt due to Defendants' sustained misconduct and deprivation of his financial resources.

No adequate legal remedy exists to compensate for the further destruction or alteration of critical documentary evidence, or for Defendants further dissipating or concealing the very assets Plaintiff seeks to recover. The Ninth Circuit has recognized that "intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Here, the ongoing financial devastation and destruction of Plaintiff's creditworthiness constitute such irreparable harm to his business and property. Courts routinely find irreparable harm where "there is a significant risk that the [defendants] will dissipate or transfer assets to frustrate recovery." *Commodity Futures Trading Comm'n v. British Am. Commodity Options*, 560 F.2d 135, 141 (2d Cir. 1977).

### C. The Balance of Equities Favors Plaintiff

Plaintiff seeks only to preserve the status quo: to prevent Defendants from further transferring, concealing, or dissipating trust assets and destroying evidence while this case is pending. The requested relief is narrowly tailored to achieve this. Defendants would suffer no cognizable harm from compliance with this Order other than the inability to further misuse disputed funds or obstruct justice.

In contrast, Plaintiff risks losing irreplaceable trust proceeds, facing eviction, enduring continued insolvency, and suffering the permanent loss of evidence necessary to prove his claims absent immediate relief. The hardship to Plaintiff significantly outweighs any inconvenience to Defendants.

### D. The Public Interest Supports the Injunction

This case implicates the integrity of trust administration, the operations of federally insured financial institutions, and the sanctity of the judicial process. The public interest strongly favors:

- Preserving evidence relevant to a federal RICO prosecution and claims of serious financial fraud;
- Preventing the continued laundering of funds, potentially through political vehicles or other opaque channels;
- Protecting victims of identity theft, elder financial abuse (indirectly, concerning the manipulation of the Bachelder Estate), and breaches of fiduciary duty by those in positions of trust;
- Ensuring that congressionally created remedies for racketeering are effective.
  See SEC v. Unifund SAL, 910 F.2d 1028, 1041 (2d Cir. 1990) (public interest favors freezing assets traceable to fraud to ensure effective final relief).

### IV. REQUESTED RELIEF

Plaintiff respectfully requests that the Court issue the Proposed Temporary Restraining Order and schedule a hearing for a Preliminary Injunction within fourteen (14) days. The Proposed Order seeks to:

1. Freeze all assets traceable to the racketeering enterprise, as specified in the Proposed Order;
2. Prevent the destruction, alteration, or concealment of any evidence relevant to the claims herein;

3. Require Defendant Bryn Mawr Trust to deposit the disputed $200,000, or an equivalent sum, into the Court's registry pending further adjudication;

4. Authorize limited, expedited discovery on targeted issues necessary for the preliminary injunction hearing;

5. Waive the Rule 65(c) bond requirement based on Plaintiff's verified indigency and the equitable nature of the relief sought.

## V. CONCLUSION

For the foregoing reasons, and as further detailed in the Verified Complaint and accompanying exhibits, Plaintiff respectfully asks this Court to enter a Temporary Restraining Order, grant expedited discovery, and set an expedited hearing on Plaintiff's Motion for a Preliminary Injunction.

Respectfully submitted,

June 4, 2025

/s/ Peter Alcock

Peter Alcock, Pro Se

1 N. 4th Place #42C

Brooklyn, NY 11249

UNITED STATES DISTRICT COURT